## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CITY OF PONTIAC
REESTABLISHED GENERAL
EMPLOYEES' RETIREMENT
SYSTEM, Individually and on Behalf of
All Others Similarly Situated,

                Plaintiff,

      v.

INSPIRE MEDICAL SYSTEMS, INC.,
TIMOTHY HERBERT, RICHARD
BUCHHOLZ and CARLTON
WEATHERBY,

CLASS ACTION

**CLASS ACTION COMPLAINT
FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff City of Pontiac Reestablished General Employees' Retirement System brings this action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, against Defendants Inspire Medical Systems, Inc. ("Inspire" or the "Company"), Timothy Herbert, Richard Buchholz, and Carlton Weatherby, (collectively, the "Defendants"), on behalf of itself and all other similarly situated persons who purchased or otherwise acquired the common stock of Inspire between August 6, 2024 through August 4, 2025, inclusive (the "Class Period"), and were damaged thereby (collectively, the "Class").

Plaintiff alleges the following based upon personal knowledge as to Plaintiff's own acts, and upon information and belief as to all other matters, based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, the review and analysis of: (i) transcripts, press releases, news articles, lawsuits, reports, and other public statements issued by or concerning Inspire; (ii) research reports issued by financial analysts concerning the Company; (iii) reports and other documents filed publicly by Inspire with the SEC; and (iv) other available materials relating to Inspire. Plaintiff's investigation into the factual allegations contained in this Complaint is continuing, and many of the relevant facts are known only by Defendants or are exclusively within their custody or control. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth in this Complaint after a reasonable opportunity for further investigation and discovery.

## I.    INTRODUCTION

1.    This federal securities class action arises from materially false and misleading statements made to investors by Inspire and its senior executives concealing significant problems with the launch of its most important new product, a sleep apnea device called "Inspire V." Throughout the Class Period, Defendants assured investors that Inspire had satisfied all regulatory, technical, and commercial conditions for the launch of its "next generation" product; that demand for Inspire V was high; and that the Company's commercial launch of its new device was proceeding successfully.

2.    None of these statements were true. In reality, and unbeknownst to investors, the Inspire V launch was a disaster. Contrary to Defendants' public statements, demand for Inspire V was minimal because Inspire's customers were already flush with inventory—older, unsold versions of Inspire's sleep apnea device. Moreover, Defendants had failed to take basic steps to ensure clinician and payor uptake of the new device leading to massive delays in adoption.

3.    By the end of the Class Period, Defendants could no longer hide the serious problems with the Inspire V rollout and, on August 4, 2025, were forced to admit the truth, causing the price of Inspire stock to plummet by ***32%*** and wiping out ***more than $1.5 billion*** in shareholder value.

## II.    JURISDICTION AND VENUE

4.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. §240.10b-5.

5.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

6.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa(c), and 28 U.S.C. § 1391(b).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this District.  Inspire is headquartered this District and conducts substantial business here.  In addition, many of the acts alleged herein occurred in this District.

7.    In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mails, interstate telephone communications, and facilities of the national securities markets.

## III.    PARTIES

8.    Plaintiff City of Pontiac Reestablished General Employees' Retirement System ("PGERS") is a public retirement plan that provides retirement benefits to employees (and their beneficiaries) of the City of Pontiac, Michigan. PGERS purchased or otherwise acquired Inspire common stock at artificially inflated prices during the Class Period, as set forth in the attached certification, and suffered damages as a result of the violations of the securities laws alleged in this Complaint.

9.    Defendant Inspire Medical Systems, Inc. is a Delaware corporation that operates as a medical technology company.  Inspire is based in Minneapolis, Minnesota and its common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "INSP".

10. Defendant Timothy Herbert ("Herbert") served, at all relevant times, as Inspire's President and Chief Executive Officer ("CEO"), as well as Chairman of the Board of Directors (the "Board").

11. Defendant Richard Buchholz ("Buchholz") served, at all relevant times, as the Company's Chief Financial Officer ("CFO").

12. Defendant Carlton Weatherby ("Weatherby") served, at all relevant times, as the Company's Chief Strategy and Growth Officer.

13. Defendants Herbert, Buchholz. and Weatherby are collectively referred to as the "Individual Defendants." During the Class Period, the Individual Defendants actively managed the Company, overseeing its operations as well as finances, and made the materially false and misleading statements described below. The Individual Defendants, by virtue of their positions, had extensive knowledge about the core aspects of Inspire's financial and business operations. They were also deeply involved in deciding which disclosures would be made by the Company to its investors. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that adverse facts had not been disclosed to the public and were being concealed, and that the positive representations being made were materially false and/or misleading at the time they were made.

## IV.   SUBSTANTIVE ALLEGATIONS

14. Inspire develops and manufactures an implantable medical device for the treatment of obstructive sleep apnea eponymously called "Inspire." The most recent iteration of the device, Inspire V, uses an implanted sensor and neurostimulator that, according to the Company, are designed to improve respiration during sleep. Defendants

touted Inspire V as groundbreaking, with the potential to drive revenue growth in an increasingly competitive market. Accordingly, investors were laser focused on the development and roll-out of this critical product.

15. The Class Period begins on August 6, 2024, shortly after the FDA approved Inspire V. Following regulatory approval, Defendants assured investors that the Company had taken all steps necessary to swiftly bring Inspire V to market and, indeed, that sales could begin in 2025, as soon as the Company had manufactured enough inventory to meet the supposedly outsized demand for the product. In particular, Defendants specifically told investors that Inspire had done everything necessary to ensure that payors would be in a position to swiftly approve claims and submit payments for newly sold Inspire V devices.

16. For example, during Inspire's August 6, 2024 earnings call, CEO Herbert said the Company was switching its focus to "operational readiness and building sufficient inventory to support a soft launch [of Inspire V] in late 2024 and a full launch in 2025." He added that the "key is making sure that we have sufficient inventories, so once we do full launch that we're able that can have continuous supply of products." Likewise, Herbert explained that the "purpose of the soft launch" is to do a very limited initial rollout with certain physicians to ensure a "positive experience with the device with all of the externals" as well as integration with "SleepSync and digital tools." Herbert assured listeners that the launch was "going to be very simple."

17. Likewise, during a healthcare conference hosted by Wells Fargo on September 4, 2024, CFO Buchholz expressed that the market's "2025 revenue consensus [of 20% growth] is reasonable" due in part to the planned launch of Inspire V, which "will help in 2025." Chief Strategy and Growth Officer Weatherby said the upcoming soft

launch would be used to "get[] real-time feedback from users to incorporate that into the training and preparation for full launch later in the year." He further said the Company would use the soft launch to "ensure that we're ready to hit the ground running" when the full launch begins.

18.    Then, in early 2025, Defendants touted the "tremendous" results of a "soft launch" of Inspire V—a preliminary release of the device to select providers and patients—as demonstrating that the full commercial launch would be highly successful. Defendants also continued to tout the high demand for Inspire V.

19.    For instance, on January 13, 2025, Herbert announced that the Company had started the soft launch of Inspire V, focusing initially on patients at a hospital in Singapore. According to Herbert, "the feedback has been tremendous." The Company was also "building inventory to be able to support the full launch" and would "continue to start phasing into" that step. Herbert boasted that the Company was "at the cusp of being able to launch the Inspire V."

20.    One month later at the Company's full-year 2024 earnings call on February 10, 2025, Herbert disclosed that the updated "SleepSync programming system has been fully launched in the United States." Herbert also updated investors on the soft launch of Inspire V, stating that the Company was "continui[ing] to gain experience . . . as we move towards full launch during this year." Herbert said the "primary factor driving the timing of our full launch remains building sufficient inventory to support the expected demand in the U.S." Herbert further assured investors that Inspire was working with "every payer to make sure that the policies are updated" to facilitate prompt approval and payment of claims for Inspire V.

21.    In May 2025, Defendants announced that Inspire had begun the full commercial launch of Inspire V.  Defendants assured investors that launch was proceeding successfully, that demand remained high, and that sales of the device were robust.

22.    For instance, on May 5, 2025, Inspire reported that it was beginning the full launch of Inspire V.  Herbert claimed that the Company's "experience to date with the Inspire V system has been very positive and well received by health care providers."  The CPT code for Inspire V had also "been incorporated into policies covering approximately 80% of our over 300 million covered lives," including through commercial payers, Medicare, and Veterans Affairs system.  From "technology . . . , to the approval, to the reimbursement, . . . and the support with the policies with the new code," Herbert said Inspire was "ready to throw the switch and be able to move into full launch."  In that vein, Herbert claimed that the Company was "expect[ing] a strong second half of 2025" as the full launch progresses.

23.    The statements in ¶¶16–22 were materially false and misleading when made. In truth, the Inspire V launch was a disaster because demand for Inspire V was poor, as providers had significant amounts of surplus inventory and were reluctant to transition to a new treatment.  Moreover—and contrary to Defendants' statements assuring investors that Inspire had taken all necessary steps to ensure a successful launch and, later, that the launch was in fact proceeding successfully—Inspire had failed to complete basic tasks that were essential predicates to launch.  Among other things, as Defendants were ultimately forced to admit, Inspire failed to complete training and onboarding for "many" of its treatment center customers; failed to set up basic IT systems, including a customer approval process; failed to ensure that critical insurer claims software was properly updated to facilitate claims

processing and payment; and failed to ensure that Medicare reimbursement was in place at the time of the launch.

## V.    THE TRUTH IS REVEALED

24.    On August 4, 2025, Inspire stunned investors when it revealed that the Inspire V launch was facing an "elongated timeframe" due to a number of previously undisclosed headwinds.  First, "many centers did not complete the training, contracting and onboarding criteria required prior to the purchase and implant of Inspire V."  Defendants further admitted that, although Inspire V's CPT code had been approved for Medicare patients, "software updates for claims submissions and processing did not take effect until July 1," which meant that "implanting centers would not be able to bill for those procedures until July 1."  Many treatment centers simply chose to continue treating with Inspire IV until then.  Finally, investors also learned for the first time that the Inspire V rollout was plagued by poor demand resulting from excess inventory.

25.    As a result of its disastrous Inspire V launch, Inspire was forced to reduce its 2025 earnings guidance by *more than 80%*, from a range of $2.20 to $2.30 per share to just $0.40 to $0.50 per share.

26.    Analysts were shocked by Inspire's disclosures.  For example, JPMorgan analysts reported that: "Lowered Guidance Puts Inspire Firmly in the Penalty Box."  Similarly, Mizuho analysts stated "Big Time #s Cut with Everything But Kitchen Sink Hitting Biz."

27.    On this news, the price of the Company's common stock declined $42.04 per share, or more than 32%, from a close of $129.95 per share on August 4, 2025, to close at

$87.91 per share on August 5, 2025 wiping out $1.2 billion in market capitalization in a single day of trading.

28.     From the Company's Class Period stock price closing high of $216.71 per share on September 23, 2024, Inspire's stock price dropped an astonishing $127.00 per share, or nearly 60%, erasing billions of dollars from the Company's market capitalization.

## VI.  SCIENTER

29.     Defendants acted with scienter in that they knew, or recklessly disregarded, that the public documents and statements they issued or disseminated to the investing public during the Class Period were materially false or misleading. Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as well as actions intended to manipulate the market price of Inspire common stock, as primary violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding Inspire, their control over, receipt, and/or modification of Inspire's materially false and misleading statements, were active and culpable participants in the fraudulent scheme alleged herein.

30.     Defendants knew or recklessly disregarded the false and misleading nature of the information they caused to be disseminated to the investing public. The fraudulent scheme described herein could not have been perpetuated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company, including the Individual Defendants. Given their positions with Inspire, the Individual Defendants controlled the contents of Inspire's public statements during the Class Period. The Individual Defendants were each provided with, or had access to, the statements alleged herein to be false and misleading prior to, or shortly

after their issuance, and had the ability as well as the opportunity to prevent their issuance or cause them to be corrected.

31. Because of their positions and access to material non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were false and misleading. As a result, each of the Defendants is responsible for the accuracy of Inspire's corporate statements, and is, therefore, responsible and liable for the representations contained therein.

## VII.    LOSS CAUSATION/ECONOMIC LOSS

32. Plaintiff and other class members were damaged as a result of Defendants' fraudulent conduct as alleged herein.  During the Class Period, Defendants engaged in a scheme to deceive investors by issuing a series of material misrepresentations, and omitting material facts and uncertainties required to be disclosed, relating to Inspire's operations, business, financial performance, and future prospects.

33. As a direct result of Defendants' scheme, misrepresentations of material fact, and omissions of material fact, the price of Inspire's common stock was artificially inflated throughout the Class Period.

34. Class members unknowingly and in reliance on Defendants' materially false or misleading statements and/or omissions purchased Inspire common stock at artificially inflated prices on the NYSE. But for Defendants' misrepresentations, omissions, and fraudulent scheme, Plaintiff and other class members would not have purchased Inspire common stock at the artificially inflated prices at which it traded during the Class Period.

35.     The truth regarding Defendants' fraud was revealed through corrective disclosures on August 4, 2025.  In response to these corrective disclosures, the price of Inspire's stock fell precipitously as the artificial inflation caused by Defendants' unlawful conduct was removed from Inspire's stock price.

36.     This decline in Inspire's stock price following the corrective disclosures is directly attributable to the market absorbing information that disclosed the falsities in or misleadingly omitted from Defendants' material misrepresentations and omissions.

37.     Plaintiff and other class members suffered economic losses as the price of Inspire's stock fell in response to the corrective disclosures.  It was foreseeable that such disclosures would cause Inspire's stock price to decline.  Thus, Defendants' wrongful conduct, as alleged herein, directly and proximately caused the damages suffered by Plaintiff and other class members.

## VIII.    PLAINTIFF IS ENTITLED TO A PRESUMPTION OF RELIANCE

38.     At all relevant times, the market for shares of Inspire common stock was an efficient market by virtue of the following reasons, among others: (i) shares of Inspire common stock met the requirements for listing, was actually listed, and actively traded on the NYSE; (ii) according to the Company's Form 10-Q for the fiscal quarter ended June 30, 2025, Inspire had 29,574,316 outstanding shares of common stock as of July 30, 2025, demonstrating a broad market for Inspire common stock; (iii) as a registered and regulated issuer of securities, Inspire filed periodic reports with the SEC and NYSE, in addition to the Company's frequent voluntary dissemination of information; (iv) Inspire regularly communicated with investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major

newswire services, the internet, and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services; (v) Inspire was followed by securities analysts employed by major brokerage firms, who wrote reports that were distributed to the customers of their respective brokerage firms and made such reports publicly available; (vi) the material misrepresentations and omissions alleged herein would tend to induce a reasonable investor to misjudge the value of Inspire common stock; and (vii) without knowledge of the misrepresented or omitted facts, Plaintiff and the members of the class purchased or otherwise acquired Inspire common stock between the time Defendants made the material misrepresentations and omissions and the time the truth was revealed, during which period the price of Inspire's common stock was artificially inflated as a result thereof.

39.     The market for Inspire common stock promptly digested current information regarding Inspire from all publicly available sources and reflected such information in the price of the Company's common stock.  Under these circumstances, all purchasers of Inspire common stock during the Class Period who relied upon the integrity of the market price of Inspire common stock, including Plaintiff, suffered similar injury through their purchase of Inspire common stock at artificially inflated prices, and a presumption of reliance under the fraud-on-the-market doctrine applies.

## IX.    THE STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE ARE INAPPLICABLE

40.     The Private Securities Litigation Reform Act's statutory safe harbor and the bespeaks caution doctrine applicable to forward-looking statements under certain

circumstances do not apply to any of the materially false or misleading statements alleged herein.

41.     None of the statements complained of herein were forward-looking statements. Rather, each was a historical statement or statement of purportedly current facts and conditions at the time each statement was made.

42.     To the extent that any materially false or misleading statement alleged herein, or any portion thereof, can be construed as forward-looking, such statement was not accompanied by meaningful cautionary language identifying important facts that could cause actual results to differ materially from those in the statement or portion thereof.  As set forth above, given the then-existing facts contradicting Defendants' statements, any generalized risk disclosures made by Defendants do not insulate Defendants from liability for their materially false or misleading statements or omissions.

43.     To the extent that the statutory safe harbor applies to any materially false or misleading statement alleged herein, or any portion thereof, Defendants are liable for any such materially false or misleading forward-looking statement because at the time such statement was made the speaker knew the statement was materially false or misleading, or the statement was authorized and approved by an executive officer of Inspire who knew that the forward-looking statement was materially false or misleading.

## X.   CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), individually and on behalf of a Class consisting of all persons and entities that purchased or otherwise acquired the publicly traded common stock of Inspire between August 6, 2024 through August 4, 2025.

45.     Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of Inspire, members of Inspire's Board, and members of their immediate families (as defined in 17 C.F.R. § 229.404, Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) any of the foregoing persons' legal representatives, heirs, successors, or assigns; (iv) any entity in which Defendants have or had a controlling interest; and (v) any affiliate of Inspire.

46.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Inspire's securities were actively traded on the NYSE. While the exact number of class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery from Defendants, Plaintiff believes that there are at least hundreds, if not thousands, of members in the proposed Class.  Class members may be identified from records maintained by Inspire or its transfer agent and may be notified of the pendency of this action by mail using a form of notice customarily used in securities class actions.

47.     Plaintiff's claims are typical of all other class members' claims, as all class members are similarly affected by Defendants' wrongful conduct in violation of the federal securities laws complained of herein.

48.     Plaintiff will fairly and adequately protect the interests of the class members and has retained counsel competent and experienced in class and securities litigation.

49.     Common questions of law and fact exist as to all class members and predominate over any questions solely affecting individual class members. Among the questions of law and fact common to the class are: (i) whether Defendants' acts and omissions as alleged herein violated the federal securities laws; (ii) whether Defendants' statements to the investing public during the Class Period misrepresented or omitted

14

material facts about Inspire's operations, business, performance, and future prospects; (iii) to what extent the class members have sustained damages; and (iv) the proper measure of such damages.

50.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable. Furthermore, as the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for class members to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## XI.    CAUSES OF ACTION

### COUNT I

### Violation of Section 10(b) of the Exchange Act
### Against All Defendants

51.     Plaintiff incorporates by reference and realleges all preceding paragraphs as if fully set forth herein.  This claim is brought against Defendants pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

52.     During the Class Period, Defendants used the means and instrumentalities of interstate commerce, the United States mails, and the facilities of a national securities exchange to make materially false or misleading statements and omissions of material fact alleged herein to: (i) deceive the investing public, including Plaintiff; (ii) cause the market price of Inspire common stock to trade above its true value; and (iii) cause Plaintiff as well as other class members to purchase or otherwise acquire Inspire common stock at artificially

inflated prices that did not reflect the stock's true value during the Class Period. In furtherance of their unlawful scheme, plan, or course of conduct, Defendants took the actions alleged herein.

53.     While in possession of material adverse non-public information, Defendants, individually and in concert, directly or indirectly, by the use of means and instrumentalities of interstate commerce, the United States mails, and the facilities of a national securities exchange: (i) employed devices, schemes, and artifices to defraud; (ii) made false or misleading statements of material fact and/or failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Inspire common stock, in violation of Section 10(b) and Rule 10b-5. Defendants are alleged as primary participants in the wrongful conduct alleged herein.

54.     Defendants acted with knowledge or a reckless disregard for the truth of the materially misrepresented and omitted facts alleged herein in that they failed to disclose such facts even though such facts were readily available to them, if not known. Defendants' material misrepresentations and omissions were made knowingly and/or recklessly for the purpose and effect of concealing the truth regarding Inspire's operations, business, performance, and future prospects generally from the investing public and supporting the artificially inflated price of its common stock.

55.     As set forth above, the dissemination of the materially false or misleading information and failure to disclose material facts artificially inflated or maintained artificial

inflation already incorporated in the market price of Inspire common stock during the Class Period. Plaintiff and other class members purchased or otherwise acquired Inspire common stock during the Class Period at artificially inflated prices in direct or indirect reliance on: (i) the materially false or misleading statements made by Defendants; (ii) the efficiency and integrity of the market in which the Company's common stock trades; and (iii) the absence of material adverse information that Defendants knew of or recklessly disregarded but did not publicly disclose.  As the previously misrepresented and/or concealed material facts eventually emerged, the price of Inspire common stock substantially declined, causing losses to Plaintiff and other class members.

56.    At the time of the material misrepresentations and omissions alleged herein, Plaintiff and other class members were not aware of their falsity and believed them to be true.  Had Plaintiff and other class members known the relevant truth regarding Inspire's financial results, operations, business, and prospects, which was misrepresented and/or concealed by Defendants, Plaintiff and other class members would not have purchased or otherwise acquired Inspire common stock at artificially inflated prices.

57.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other class members suffered damages in connection with their transactions in the Company's common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

58.     Plaintiff incorporates by reference and realleges all preceding paragraphs as if fully set forth herein. This claim is brought against the Individual Defendants pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

59.     Prior to and during the Class Period, the Individual Defendants, by virtue of their high-level positions, were privy to, and monitored, confidential and proprietary information concerning Inspire, its business, operations, performance, and future prospects, including its compliance with applicable federal, state, and local laws and regulations.

60.     In their respective roles, the Individual Defendants had regular access to non-public information about Inspire's business, operations, performance, and future prospects through access to internal corporate documents and information, conversations, and connections with other of Inspire's corporate officers and employees, attendance at management meetings and meetings of the Company's Board of Directors and committees thereof, as well as reports and other information provided to them in connection therewith.

61.     Each of the Individual Defendants was a controlling person of Inspire within the meaning of Section 20(a), as alleged herein. By virtue of their high-level positions, their participation in or awareness of the Company's day-to-day operations and finances, and/or knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants each had the power and authority to influence and control, and did influence and control, directly or indirectly, the day-to-day decision-making of the Company, including the content and dissemination of the statements Plaintiff alleges were materially false and misleading.

62.    Each of the Individual Defendants is liable as a primary participant in a wrongful scheme and course of business that operated as a fraud and deceit on purchasers of Inspire common stock during the Class Period, which included the dissemination of materially false or misleading financial statements and statements (both affirmative statements and statements rendered misleading because of material omissions) set forth above. The scheme: (i) deceived the investing public regarding Inspire's operations and the true value of Inspire's common stock; and (ii) caused Plaintiff and other class members to purchase Inspire common stock at artificially inflated prices, which plummeted in value when the truth concerning Inspire's business, operations, performance, and future prospects was revealed.

63.    The Individual Defendants were provided with, or had unlimited access to, copies of the Company's reports, press releases, public filings, and other statements Plaintiff alleges were materially misleading prior to and/or shortly after these statements were issued and had the ability and ultimate authority to prevent the issuance of these statements or cause these statements to be corrected.  In particular, the Individual Defendants maintained direct and supervisory involvement in the day-to-day operations of the Company and therefore had, or are presumed to have had, the power to control or influence the particular public statements or omissions giving rise to the securities violations as alleged herein and exercised the same.

64.    As set forth above, Defendants violated Sections 10(b) and Rule 10b-5 by their acts and omissions as alleged herein.  By virtue of the Individual Defendants' status as controlling persons and their respective participation in the underlying violations of Section 10(b) and Rule 10b-5, the Individual Defendants are liable under Section 20(a).  As a direct

and proximate result of the Individual Defendants' culpable conduct, Plaintiff and other class members suffered damages in connection with their transactions in Inspire's common stock during the Class Period.

## XII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b.    Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

d.    Awarding such equitable, injunctive or other further relief as the Court may deem just and proper.

## XIII.    JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: November 6, 2025                    Respectfully submitted,

*/s/ Gregg M. Fishbein*
Gregg M. Fishbein (#0202009)
**LOCKRIDGE GRINDAL NAUEN, PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
gmfishbein@locklaw.com

Karin E. Fisch (*pro hac vice* admission forthcoming)
Vincent J. Pontrello (*pro hac vice* admission forthcoming)
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (610) 722-8500
kfisch@gelaw.com
vpontrello@gelaw.com

*Counsel for Plaintiff*

Cynthia J. Billings-Dunn (*pro hac vice* admission forthcoming)
**ASHER KELLY**
25800 Northwestern Highway - Ste 1100
Southfield, MI 48075
Telephone: (646) 722-8500
cbdunn@asherkellylaw.com

Jeffrey A. Reeves (*pro hac vice* admission forthcoming)
**REEVES LAW FIRM PC**
1100 Peachtree Street, Suite 250
Atlanta, GA 30309
Telephone: (404) 795-6139
jeff@reeveslawfirmpc.com

*Additional Counsel for Plaintiff*